UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDEEP DHOAT,<br><br>   Plaintiff,<br><br> v.<br><br>WALIA ET AL,<br><br>   Defendant. | Case No. 24-cv-03716-JSC<br><br>**ORDER RE: MOTION TO DISMISS THE SECOND AMENDED CROSS-COMPLAINT**<br><br>Re: Dkt. No. 35 |

  Mandeep Dhoat brings this suit in both his individual capacity and derivatively as a current shareholder in Defendant WaveStrong, Inc. Dhoat alleges Defendants engaged in multiple instances of wire fraud amounting to racketeering as well as other fraudulent activity. Based on these allegations, Dhoat asserts seven claims: 1) recission of contract based on fraud in the inducement; 2) wire fraud; 3) civil RICO violations; 4) civil theft; 5) breach of fiduciary duty against Walia; 6) aiding and abetting; and 7) fraud. Defendants Walia and SevenSecur Inc. move to dismiss all claims under Rule 12(b)(6).[1] Defendant WaveStrong joins the motion. (Dkt. No. 37.)[2] After considering the parties' submissions, and with the benefit of oral argument on November 7, 2024, the Court GRANTS in part and DENIES in part the motion to dismiss as set forth below. Dhoat fails to state a claim for wire fraud, RICO section 1962(a), civil theft, breach of fiduciary duty on his own behalf, and fraud against Defendants SevenSecur and WaveStrong, but the remaining claims are plausibly pled and may proceed.

---

[1] Defendants The Bit Bazaar LLC and Erfan Ibrahim also purport to join the motion. (Dkt. No. 38.) But they answered the complaint, (Dkt. No. 36), and so may not bring a 12(b)(6) motion. *See, e.g., KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1027 (N.D. Cal. 2009) (citing Rule 12(b)).
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**FACTUAL ALLEGATIONS**

To aid in the subsequent analysis of claims, the Court summarizes the principal allegations underlying the Second Amended Cross-Complaint ("SACC"). (Dkt. No. 25.)

### A. The Stock Purchase Agreement

In 2010, Walia approached Dhoat to invest in and help run WaveStrong. (Dkt. No. 25 ¶ 29.) WaveStrong identifies IT consultants and connects those consultants to companies, such as IBM, in need of their services. (*Id*. ¶¶ 4-5.) From 2011 to 2019, Dhoat served as WaveStrong's CTO, after which he departed to start his own venture, SafeAeon. (*Id*. ¶¶ 32, 40.) Despite his departure, Dhoat retained an equity interest in WaveStrong, holding 36.5% of the shares. (*Id*. ¶ 42.) In 2021, Dhoat, Walia, and the third shareholder, Khanna, were approached by Cerberus Cyber Sentinel Corporation with an offer to purchase WaveStrong for $8.55 million. (*Id*.) Dhoat and Khanna were interested in selling their shares, but Walia discouraged this, instead offering to purchase 12.5% of WaveStrong shares from Dhoat. (*Id*. ¶¶ 42, 47.) Dhoat, Walia, and WaveStrong signed the Stock Purchase Agreement in September 2021, and in exchange for the shares, Dhoat received $1 million. (*Id*. at Ex. 2.)

During this time, and unbeknownst to Dhoat, Walia was negotiating with a second prospective WaveStrong purchaser—Nautic Partners LLC. (*Id*. ¶¶ 43-46.) A January 2021 term sheet exchanged between Walia and Nautic shows Nautic offered to purchase WaveStrong for $9 million, with an additional $6 million employee signing bonus for Walia, a 2022 performance bonus for Walia, and a two-year retention bonus paid in stock to Walia at a later date. (*Id*. at Ex. 1.) The total value of the transaction would have been $20 million. (*Id*.) Further, per an August 2021 email, Walia discussed excluding his "employment details," that is, his various bonuses, from the Letter of Intent ("LOI") that Dhoat and Khanna would sign to complete the transaction. (*Id*. ¶ 45.)

By October 2021, Walia shared the LOI with Dhoat and Khanna, but failed to disclose "the true size and nature of the Nautic offer." (*Id*. ¶ 49.) Khanna ultimately refused to sign given reservations about the transaction. (*Id*. ¶¶ 49-50.) In May 2023, Dhoat learned of the early communications between Walia and Nautic from emails Khanna shared with him. (*Id*. ¶ 51.) In

2

August 2023, Dhoat and Khanna convened a WaveStrong Board of Directors meeting, adopting resolutions to audit the company's financials and investigate Walia's conduct. (*Id*. ¶¶ 53-54.) Days later, Walia convened a second meeting, and given his 51% stake in the company, annulled the resolutions of the prior meeting, removed Dhoat from the Board of Directors, and appointed Mehbooba Walia (Walia's wife) to the Board. (*Id*. ¶ 55.) Following this meeting, the Board comprised Walia, M. Walia, and Khanna. (*Id*. ¶ 57.)

### B. Wire Fraud Scheme

WaveStrong profits by paying its recruited IT professionals at a lower hourly rate than what it ultimately charges the client. (*Id*. ¶¶ 4-5.) In the alleged scheme, profits that would have accrued to WaveStrong were diverted through "strawmen" billing entities to a company Walia owned. (*Id*. ¶¶ 6-9.)

The following example demonstrates how the scheme proceeded. When IBM requested a temporary IT professional at a given rate, Defendant Raj Sehrai consulted the WaveStrong database, identified a qualified IT professional, and then forwarded the information to Walia. (*Id*. ¶¶ 65-69.) Rather than contract the professional directly through WaveStrong, Walia instructed Sehrai to contract the professional through Walia's company, SevenSecur. (*Id*. ¶ 66.) SevenSecur then inflated the hourly rate of the IT professional and used a billing intermediary entity to contract with WaveStrong at this higher rate. (*Id*. ¶¶ 67-69.) Two billing intermediaries participated in this scheme: 1) Bailey Advisory Services Co. (a now defunct entity) ("BASCO"), which SevenSecur acquired in October 2020, and through a proxy agreement transferred all proceeds directly to SevenSecur; and 2) The Bit Bazaar LLC ("TBB"), which functioned similarly. (*Id*. ¶¶ 70, 76.) As a result, SevenSecur profited from the difference between the IT professional's original rate and the inflated rate paid by WaveStrong, thereby reducing the profit margin for WaveStrong when it contracted the same professional to IBM. The use of billing intermediary entities concealed the involvement of Walia's company from WaveStrong's finance manager and shareholders. (*Id*. ¶ 61.)

Between September 2020 and February 2024, BASCO was involved in this method of diverting profits 24 different times. (*Id*. ¶ 75.) Between January 2020 and February 2024, this

1  method was replicated 14 times using TBB as the billing intermediary.  (*Id.* ¶ 77.)  The SACC

2  describes details of the transactions for at least nine named contractors.  (*Id.* ¶¶ 65-79.)  These

3  details include emails exchanged within WaveStrong regarding the rates paid to the professionals,

4  dates of the communications, as well as invoices showing the professionals' rates as contracted by

5  SevenSecur or the billing entity compared to the rates billed to WaveStrong.

## DISCUSSION

Certain of Dhoat's claims sound in fraud, and per Federal Rule of Civil Procedure 9(b), must be pled with particularity.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  So, the Court considers whether the SACC properly alleges "the time, place, and specific content of [any] false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).  "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."  *Odom*, 486 F.3d at 554.

In adjudicating the motion to dismiss, the Court assumes the truth of the allegations and draws inferences in favor of the non-moving party.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  However, conclusory statements are not entitled a presumption of truth and may be discounted.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  The Court now considers each of the claims in turn.

## I.   FIRST CLAIM: FRAUD IN THE INDUCEMENT RECISSION OF CONTRACT

Dhoat's first claim seeks recission of the Stock Purchase Agreement he signed with Walia based on fraudulent inducement.  "To prove a claim of fraudulent inducement, a plaintiff must show (a) a misrepresentation, false representation, concealment or nondisclosure; (b) knowledge of falsity; (c) intent to defraud or to induce plaintiff to enter into a contract; (d) justifiable reliance; and (e) resulting damage."  *Cream v. N. Leasing Sys., Inc.*, No. 15-cv-01208, 2015 WL 4606463, at *5 (N.D. Cal. July 31, 2015) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)).  The recission remedy amounts to "the undoing of a thing and means that both parties to the contract are entirely released as if it had not been made." *Douglass v. Dahm*, 101 Cal.App.2d 125, 128

(1950). As an equitable remedy, recission requires the plaintiff "[restore] to the defendant everything of value which the plaintiff has received in the transaction." *Fleming v. Kagan*, 189 Cal. App. 2d 791, 796 (1961) (citation omitted) (cleaned up). This rule of equity applies even when "the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Id*.

Dhoat has pled with particularity facts sufficient to satisfy each element of the fraudulent inducement claim. To begin, Dhoat alleges Walia concealed details of the negotiation with Nautic—in particular, the full valuation of the transaction estimated at $20 million. (Dkt. No. 25 ¶ 86.) And, as a WaveStrong officer, Walia had a duty to disclose any special facts concerning the value of WaveStrong stock when buying it from Dhoat. *See Hobart v. Hobart Est. Co.*, 26 Cal. 2d 412, 432-33 (1945) ("[W]here an officer or a director of a corporation has knowledge of special facts affecting the value of its stock, he cannot deal with a stockholder at arm's length but is under a duty to disclose such facts before making a purchase or sale of the stock."). Dhoat further alleges Walia intentionally withheld this information to induce Dhoat to sign the Stock Purchase Agreement for a price of $80,000 per share, totaling $1 million. (Dkt. No. 25 ¶¶ 81-86.) Had Dhoat been told the details of the Nautic transaction, namely that the total value was closer to $20 million, he would not have agreed to sell his stock at that price. (*Id*. ¶ 86.)

Walia's counterarguments fail to persuade. First, Walia argues Dhoat was aware of negotiations with Nautic at the time he signed the Stock Purchase Agreement, and therefore, no misrepresentation could have occurred. Though Dhoat concedes Walia told him Nautic was interested in purchasing WaveStrong prior to signing the agreement, he also alleges Walia concealed the details of the agreement, including the total value of the transaction. (*Id*. ¶ 47.) The material concealment was about the relevant details of the Nautic transaction. Dhoat does not allege—nor does his claim rely on—a complete absence of information about the Nautic transaction.

Second, Walia asserts any concealment did not proximately cause damage to Dhoat since the Nautic transaction ultimately fell through. Again, Walia misunderstands the relevant claim. Dhoat asks for the equitable remedy of recission of contract, not monetary damages. So, the

5

alleged injury is not that he received less money for his shares than if the Nautic transaction had occurred; instead, it is that he was induced to sign an agreement he would not have otherwise made due to Walia's alleged concealment. Now, Dhoat wants out of that agreement. (*Id*. ¶ 86.)

Last, Walia cites *Eldridge v. Tymshare*, Inc., 186 Cal. App. 3d 767 (1986), to assert he had no duty to disclose information about the Nautic transaction to Dhoat. The *Eldridge* court held "as a matter of law corporate directors are under no duty to make a public disclosure of merger negotiations . . . ." *Id*. at 776. However, *Eldridge* on both the facts and its holding is inapplicable. There, shareholders of the defendant company had sold their shares at a loss and filed suit. *Id*. at 771. They argued the company was obligated to disclose it had resumed negotiations regarding a potential merger, and they would have sold their shares at a higher price had they been properly informed. *Id*. The court held the company's officers had no duty to publicly disclose negotiations of a merger transaction if the parties had not reached an agreement in principle. *Id*. at 776. Unlike in *Eldridge*, Walia—a WaveStrong officer—entered into an agreement with shareholder Dhoat to purchase stock; this lawsuit does not involve shareholders transacting on the open market. Further, though *Eldridge* holds there is no duty "to make a *public* disclosure," this does not disrupt the holding of cases like *Hobart*, 26 Cal. 2d at 432-33, which applies to individual transactions between shareholders and officers.

For these reasons, the Court DENIES the motion to dismiss the rescission claim.

## II. SECOND CLAIM: WIRE FRAUD, 18 U.S.C. §§ 1343 & 1349

Dhoat's second claim asserts a derivative cause of action for wire fraud against Defendants on behalf of WaveStrong. However, the wire fraud statute, 18 U.S.C. § 1343, does not provide litigants with a private right of action. *Cobb v. Brede*, No. 10-cv-03907, 2012 WL 33242, at *2 (N.D. Cal. Jan. 6, 2012) (citing *Wilcox v. First Interstate Bank*, 815 F.2d 522, 533 (9th Cir. 1987) ("Other than in the context of RICO, federal appellate courts hold that there is no private right of action for mail fraud under 18 U.S.C. § 1341.")), *aff'd*, 517 F. App'x 556 (9th Cir. 2013). Dhoat concedes this claim fails. (Dkt. No. 39 at 8 n.2.)

So, the Court GRANTS the motion to dismiss the wire fraud claim. Since amendment would be futile, the dismissal is without leave to amend.

6

### III.   THIRD CLAIM: CIVIL RICO, 18 U.S.C. § 1962

Dhoat further asserts a derivative cause of action on behalf of WaveStrong for racketeering activity under 18 U.S.C. § 1962(a), § 1962(c), and conspiracy under § 1962(d). The Court begins with the claim under subsection (c).

#### A.   18 U.S.C. § 1962(c)

"To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Dhoat has plausibly alleged the essential elements of a civil RICO claim under this subsection.

##### 1.   Predicate RICO Acts: Wire Fraud

"[R]acketeering activity is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." *Sanford*, 625 F.3d at 557 (citation omitted) (cleaned up). Dhoat alleges predicate acts of wire fraud as the basis of his claim. "[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id*. Any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," *id*. at 715. Further, a fraudulent scheme based on the defendant's failure to disclose certain information must derive from an independent duty of disclosure. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1472 (9th Cir. 1987).

Dhoat has alleged with particularity the predicate acts of wire fraud. As to the "the time, place, and specific content of [any] false representations as well as the identities of the parties to the misrepresentation," the SACC alleges specific emails, invoices, dates, content, and participating individuals. *See Sanford*, 625 F.3d at 558. For instance, Dhoat describes in detail the operation of the alleged scheme for IT professional Sumit Ahuja. On September 21, 2020, IBM requested a qualified IT professional from WaveStrong at a rate not to exceed $165 per hour.

(Dkt. No. 25 ¶ 65.) Thereafter, Sehrai located Ahuja in the WaveStrong database at an hourly rate of $100 per hour. (*Id.*) Rather than have WaveStrong contract directly with Ahuja, Walia instructed Sehrai to contract through SevenSecur. (*Id.* ¶ 66.) Dhoat includes details of the Master Contractor Agreement between SevenSecur and Ahuja, the newly inflated hourly rate of $145 per hour, as well as the date the agreement was signed. (*Id.* ¶¶ 68-69.) Dhoat also details how the billing entity, BASCO, was involved in an agreement with SevenSecur, and then subsequently how BASCO contracted with WaveStrong for Ahuja's services at the inflated rate. (*Id.* ¶¶ 68-71.) Allegations of this specificity are sufficient "to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Sanford*, 625 F.3d at 558.

Walia advances three arguments in response, but none is persuasive. To begin, Walia argues the SACC fails to allege with particularity the use of interstate wires. Yet Dhoat sets out in significant detail the dates and content of emails related to Walia's contracting of IT professionals through SevenSecur or a billing entity, as well as WaveStrong's contract with those same professionals at an inflated rate. Beyond alleging the scheme involved emails and the use of interstate wires, (Dkt. No. 25 ¶¶ 59, 110), the complaint also elaborates on the details of those wires. This suffices to provide Defendants with the "circumstances constituting fraud so that [they] can prepare an adequate answer from the allegations." *Odom*, 486 F.3d at 555.

Second, Walia asserts there were no misrepresentations in any of the alleged emails since they involve valid business transactions between WaveStrong, IBM, and the billing entities. But this argument is not aligned with the fraudulent scheme alleged. The mailings involved in a wire fraud claim do not need to contain false information. *Schmuck*, 489 U.S. at 715. Moreover, the gravamen of Dhoat's allegations is not that Walia and the other defendants shared false information. Instead, the scheme was organized around a failure to disclose material information about Walia's conflict of interest and diversion of profits from WaveStrong to companies in which he had a financial stake. The alleged non-disclosure of this information, which violated a fiduciary duty to disclose, serves as the basis of the wire fraud claim.

Third, Walia argues the transactions between WaveStrong and the other entities were

properly recorded and available to Dhoat via QuickBooks; so, there was no concealment. But just because the details of the alleged scheme were eventually discovered does not mean, as a matter of law, they were not concealed. In addition, drawing reasonable inferences in Dhoat's favor, the QuickBooks transaction records did not disclose Walia's financial interest in SevenSecur and the billing entities.

In sum, Dhoat plausibly alleges the requisite predicate acts of wire fraud needed to sustain a civil RICO claim.

### 2. Associated-in-Fact Enterprise

Dhoat alleges Defendants comprise an associated-in-fact enterprise for purposes of the civil RICO claim. An associated-in-fact enterprise is defined broadly as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552 (citation omitted). Such an enterprise must be "an ongoing organization" whose "various associates function as a continuing unit." *Id*. "An ongoing organization is 'a vehicle for the commission of two or more predicate crimes' while the continuity requirement looks to whether the racketeering behavior was 'ongoing' rather than isolated activity." *Id*. at 553 (citation omitted).

Here, Dhoat plausibly alleges the existence of an associated-in-fact enterprise among the various defendants to engage in wire fraud. Dhoat alleges 24 separate instances of inflating IT professional rates to divert profits from WaveStrong to Walia's company using the BASCO billing entity. (Dkt. No. 25 ¶ 75.) Dhoat alleges an additional 14 instances of this same scheme using the TBB billing entity. (*Id*. ¶ 77.) These repeated instances coupled with the similarity in pattern of the alleged scheme establishes the necessary predicate acts and "ongoing" behavior required of a civil RICO enterprise. Additionally, Dhoat alleges knowledge and complicity in this scheme by the various entities to satisfy the requirement of a "common purpose" within the alleged enterprise. (*See id*. ¶¶ 65-76, 79.) In particular, the existence of a proxy agreement directing funds from the billing entities to SevenSecur suggests a shared purpose to advance the scheme as opposed to each entity operating independently.

Walia argues the alleged conduct constitutes the ordinary business activities of the entities

9

1 rather than affairs of the RICO enterprise and that Dhoat has failed to allege an enterprise structure
2 separate from what is inherent in Defendants' businesses. These arguments are unavailing. To
3 start, the SACC alleges more than ordinary business activity: it alleges Sehrai and Walia used
4 WaveStrong's information to poach IT professionals for SevenSecur. (Dkt. No. 25 ¶ 65.) It also
5 alleges, via the proxy agreement between BASCO and SevenSecur, that the billing entity was not
6 conducting its own business, but rather transferring funds to SevenSecur without deducting any
7 overhead or service fees for company personnel. (*Id.* ¶ 70.) These allegations support Dhoat's
8 claim the enterprise operated to conduct the wire fraud scheme.

As to Walia's second point, the Ninth Circuit made clear in *Odom*, 486 F.3d at 551, that
10 there is no requirement of a separate, ascertainable structure of the enterprise. The authority
11 Defendants reply upon (*see e.g.*, Dkt. No. 40 at 11) predates *Odom* and thus fails to consider the
12 court's clarification of the standard.

13 So, the Court is satisfied that Dhoat plausibly alleges the existence of an associated-in-fact
14 enterprise.

### 3. Pattern of Racketeering Activity

16 A civil RICO claim requires a "pattern" of activity, meaning "at least two acts of
17 racketeering activity." *Sanford*, 625 F.3d at 557. The requisite pattern must involve the "same or
18 similar purposes, results, participants, victims, or methods of commission" and cannot be "isolated
19 events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The Supreme Court further
20 observed:

> [p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

25 *Id.* at 242.

26 Dhoat has plausibly alleged a pattern of racketeering activity by the associated-in-fact
27 enterprise. The SACC elaborates at least five transactions involving alleged inflation of IT
28 professionals' hourly rates by SevenSecur and the billing entities BASCO and TBB. (Dkt. No. 25

¶¶ 65-77.) Further, Dhoat alleges an additional 38 instances of the same pattern of wire fraud: Walia and Sehrai identity qualified IT consultants, contract them through SevenSecur or a billing entity, and then re-contract them to WaveStrong at a higher rate. (*Id.*) The similarity between all these transactions evinces the "similar purposes, results, participants, victims, or methods of commission" required under *H.J. Inc.*, 492 U.S. at 240. Dhoat also alleges the transactions spanned years, indicating a threat of continuity in line with the Supreme Court's discussion of the RICO statute's purpose.

Defendants' insistence a pattern is not plausibly alleged since TBB and BASCO are unrelated entities and some of the transactions occurred over a year apart—indicating a lack of relatedness—is unpersuasive. The pattern of activity is about the similarity of the conduct underlying the civil RICO claim; separate control of entities in the associated-in-fact enterprise does not speak to the pattern of *conduct*. As to the timing interval between the alleged transactions, Walia cites no case to suggest two acts separated by approximately one year, but virtually identical in method of commission, do not constitute a pattern. Drawing inferences in favor of the non-moving party, the time gap between transactions could very well support the existence of a pattern as it shows a threat of continuity.

Accordingly, Dhoat has plausibly alleged the existence of a pattern of racketeering activity needed to sustain his 1962(c) civil RICO claim.

**B.    18 U.S.C. § 1962(d)**

Per 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Based on the above analysis, Dhoat has plausibly alleged a substantive RICO violation. Given the denial of Walia's motion to dismiss the civil RICO claim under 18 U.S.C. § 1962(c), the conspiracy claim under subsection (d) also survives the motion.

### C. 18 U.S.C. § 1962(a)

Dhoat further alleges a RICO claim under a separate provision of the RICO statute, 18 U.S.C. § 1962(a). The subsection provides, in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). In his opposition, Dhoat addresses this claim in a one-sentence footnote, summarily concluding the elements have been met. (Dkt. No. 39 at 12 n.3.) The Court disagrees.

The SACC fails to plausibly allege the elements essential to a claim under subsection (a). In conclusory fashion, Dhoat states Defendants received income from the racketeering activity "to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which effect, interstate commerce." (Dkt. No. 25 ¶ 118.) The complaint otherwise includes no plausible allegations about how precisely the money was used, to what end, or anything beyond these words parroted from the language of the statute. The Court "need not . . . accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (cleaned up). Such bare assertions are insufficient to survive a motion to dismiss.

\* \* \*

Therefore, the Court GRANTS the motion as to the claim under 18 U.S.C. § 1962(a). But as explained above, the Court DENIES the motion to dismiss as to the remainder of the RICO claim.

## IV. FOURTH CLAIM: CIVIL THEFT, CAL. PENAL CODE § 496

Dhoat also asserts a derivative cause of action for receipt of stolen property under California Penal Code § 496. Section 496(a) elaborates the elements of the offense:

12

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

In the civil context, a plaintiff injured by such theft "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." Cal. Penal § 496(c). Theft is broadly defined as "the unlawful taking of another's property" and "includes larceny, embezzlement, larceny by trick, and theft by false pretenses." *People v. Shannon*, 66 Cal. App. 4th 649, 653 (1998). For the civil claim of conversion, a "plaintiff must establish an actual interference with his ownership or right of possession." *Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1282 (2002) (citation omitted). Here, Dhoat fails to plausibly allege a claim for civil theft.

Dhoat does not articulate the particular species of theft alleged, but even if he had, the SACC does not allege an "unlawful taking of another's property." *Shannon*, 66 Cal. App. 4th at 653. Civil theft cannot occur "[w]here [the] plaintiff neither has title to the property alleged to have been converted, nor possession thereof . . . ." *Ananda Church of Self-Realization*, 95 Cal. App. 4th at 1282. As alleged, Dhoat's derivative claim is based on hypothetical profits that could have gone to WaveStrong if the company had contracted with IT professionals directly, rather than through the billing intermediary entities. WaveStrong had neither title to, nor possession of, the money allegedly stolen because it did not actually receive the hypothetical profits from IBM. So, the allegations do not support a claim of civil theft.

Dhoat's citation to *Switzer v. Wood*, 35 Cal. App. 5th 116 (2019), *as modified* (May 10, 2019), as well as *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-cv-00155, 2016 WL 1241026, (S.D. Cal. Mar. 30, 2016), is unpersuasive. In both cases, the underlying theft or conversion claims were for property the plaintiff had possessed and which was transferred to or taken by the defendant. For instance, in *Switzer*, there was conversion of spinal implant technology as well as actual funds the plaintiff possessed. 35 Cal. App. 5th at 121. Likewise, in

13

*Worldwide Travel, Inc.*, the plaintiff alleged the defendants diverted funds in the control of the plaintiff to their own accounts. 2016 WL 1241026 at *3. Neither case supports a civil theft claim based on profits not actually earned by, or in the possession of, the plaintiff.

Accordingly, the Court GRANTS the motion to dismiss the fourth claim for civil theft.

## V.   FIFTH CLAIM: BREACH OF FIDUCIARY DUTY

Next, Dhoat asserts a direct claim as a shareholder against Walia for breach of fiduciary duty as well as a derivative claim on behalf of WaveStrong against Walia.

To succeed on a cause of action for breach of fiduciary duty, a plaintiff must plausibly allege "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483, *as modified on denial of reh'g* (Jan. 6, 1999). In California, "corporate directors owe a fiduciary duty to the corporation and its shareholders," which includes acting "with honesty, loyalty, and good faith." *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1037 (2009).

On his direct claim, Dhoat fails to plausibly allege damages proximately caused by Walia's breach of duty. The factual basis of Dhoat's direct claim is the alleged non-disclosure of negotiations between Walia and Nautic at the time Dhoat entered into the Stock Purchase Agreement. (Dkt. No. 25 ¶¶ 142-46.) As to damages, Dhoat alleges he is owed an amount "measured by the difference between $7.3 million and the current value of 36.5% of WaveStrong's stock minus the $1 million Walia paid Dhoat [pursuant to the Stock Purchase Agreement]. . . ." (*Id*. ¶ 145.) The $7.3 million figure derives from Dhoat's allegation that the value of the transaction with Nautic *would have been* $20 million, and at the time, he owned a 36.5% stake in WaveStrong. (*Id*. ¶ 144.) However, this damages theory is too speculative to plausibly state a claim. Dhoat must allege the defendant's "misconduct was the cause in fact of the plaintiff's damage." *Tribeca Companies, LLC v. First Am. Title Ins. Co*., 239 Cal. App. 4th 1088, 1102 (2015). No transaction with Nautic was completed. So, the alleged damages arise from Dhoat's assumption that the Nautic transaction would have succeeded had Walia disclosed the true value of the proposed transaction. But the SACC does not include allegations plausibly

supporting that inference.  Indeed, Dhoat alleges Walia concealed details of the transaction to ensure he would receive more money than his fellow shareholders.  (Dkt. No. 25 ¶¶ 43-44, 51.)  Given this allegation, and without more, it is not plausible that Walia would have agreed to the Nautic transaction had all the information been disclosed, since he would stand to make less money.  Absent plausible allegations on this essential element, the claim cannot advance.

On his derivative claim, Dhoat plausibly alleges the elements of a breach of fiduciary duty owed by Walia to WaveStrong.  As a director and CEO of WaveStrong, Walia owed a fiduciary duty to act in good faith and with loyalty to WaveStrong and its shareholders.  *Berg & Berg Enterprises*, 178 Cal. App. 4th at 1037.  Dhoat also pleads a plausible breach of that duty, namely through Walia's failure to disclose his financial interest in both SevenSecur and the billing entities as well as the diversion of profits from WaveStrong to SevenSecur.  (*Id.* ¶ 148.)  In perpetrating the alleged scheme of wire fraud and racketeering, Walia used WaveStrong resources while diverting business opportunities toward his other company.  (*Id.*)  As to damages, Dhoat plausibly alleges the total value of the profits WaveStrong would have earned on each completed contract with IBM but for Walia's breach of duty.  (*Id.* ¶¶ 148-50.)  Due to Walia's alleged breaches, WaveStrong paid inflated hourly rates for IT professionals to benefit SevenSecur (and thus Walia) at the company's expense.  (*Id.*)

Walia's arguments to the contrary are without merit.  First, Walia argues the derivative claim fails because the civil RICO and fraud claims based on the same underlying conduct fail.  The Court disagrees and denies the motion to dismiss as to both the civil RICO claim and the fraud claim.  Second, Walia cites the California Corporations Code § 1601(a)(1) to assert that since Dhoat had access to the books and records of WaveStrong, and all transactions with TBB and BASCO were properly recorded, there was no failure to disclose.  But, as explained above, the allegation is not that the transactions were improperly recorded, it is that Walia failed to disclose his personal financial interest in SevenSecur or the billing entities contracting with WaveStrong.  (Dkt. No. 25 ¶ 148.)  Walia makes no argument that, as a matter of law, information on his financial interest would be available via a books and records request.  And even if it were, that would not necessarily obviate the need for disclosure.  *See, e.g.*, Cal. Corp. Code § 310 (discussing

15

a director's requirement to disclose personal interest in contracts entered into by the corporation). Assuming the truth of the allegations in the SACC and drawing inferences in favor of the plaintiff, Dhoat has plausibly alleged a derivative cause of action for breach of fiduciary duty.

The Court GRANTS the motion to dismiss as to Dhoat's direct claim against Walia. The Court DENIES the motion to dismiss as to the derivative claim.

## VI. SIXTH CLAIM: AIDING & ABETTING

Dhoat asserts a derivative claim against Defendants for aiding and abetting the alleged breaches of fiduciary duty, theft, wire fraud, and racketeering activity. As the theft, wire fraud, and direct breach of fiduciary duty claims have been dismissed, the Court considers only whether Dhoat has plausibly alleged aiding and abetting of the derivative breach of fiduciary duty and racketeering activity. That said, 18 U.S.C. § 1964(c)—the RICO civil remedies provision—does not provide a private right of action for aiding and abetting. *See In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 601 F. Supp. 2d 1201, 1219 (S.D. Cal. 2009) (noting the Ninth Circuit had not definitively ruled on the issue, but other federal courts of appeals had found no private right of action). The remaining claim, then, is aiding and abetting the derivative breach of fiduciary duty.

"To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty." *In re Mortgage Fund '08 LLC*, 527 B.R. 351, 361 (N.D. Cal. 2015) (citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1145–46 (2005)).

Dhoat has plausibly alleged the requisite knowledge and assistance by Defendants to advance his claim. Here, the primary wrong committed by Walia was the scheme to divert business away from WaveStrong to his own company (SevenSecur) and the billing entities, without disclosing his financial interest in these companies to either the Board of Directors or shareholders. As discussed in the Court's analysis of the predicate acts to the civil RICO claim, Dhoat alleges Defendants knew of and participated in this wire fraud scheme. (Dkt. No. 25 ¶¶ 65-

1  70, 76, 79.)  The civil RICO wire fraud scheme implicates the fiduciary duties of honesty, loyalty, and good faith owed by Walia to WaveStrong.  *Berg & Berg Enterprises,* 178 Cal. App. 4th at 1037.  Given the facts underlying the civil RICO claim also form the basis of this aiding and abetting claim, the SACC allegations regarding each defendant's participation in the associated-in-fact enterprise demonstrate substantial assistance in accomplishing Walia's breach of duty.  In sum, the SACC plausibly alleges Defendants had knowledge of the wrong committed by Walia as a fiduciary to WaveStrong and aided Walia through the associated-in-fact enterprise that perpetrated the wire fraud scheme.

So, the Court GRANTS the motion to dismiss as to the claims of aiding and abetting wire fraud and racketeering.  Since amendment would be futile, the dismissal is without leave to amend.  The Court also GRANTS the motion as to aiding and abetting the direct breach of fiduciary duty and civil theft, with leave to amend.  Further, the Court DENIES the motion to dismiss as to the claim of aiding and abetting the derivative breach of fiduciary duty.

## VII.  SEVENTH CLAIM: FRAUD

Grounded in the same alleged conduct that underlies the civil RICO claim, Dhoat's seventh cause of action asserts a derivative common law fraud claim on behalf of WaveStrong against all Defendants.  Under California law, fraud comprises five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Small v. Fritz Companies, Inc*., 30 Cal. 4th 167, 173 (2003) (citation omitted).  When the fraudulent scheme is based on the defendant's failure to disclose certain information, there must be an independent duty of disclosure.  *California Architectural Bldg. Prod., Inc*., 818 F.2d at 1472.

As discussed in the Court's analysis of the civil RICO claim, *supra*, Dhoat has alleged with particularity a fraudulent scheme to inflate the hourly rates of IT professionals and divert profit from WaveStrong to Walia's own company.  Walia raises two further arguments for dismissal: 1) Dhoat has not alleged the requisite duty to disclose for all Defendants, and 2) Dhoat has not alleged reliance by WaveStrong on any concealment or non-disclosure.  This first argument has merit, the second does not.

17

Dhoat has only plausibly alleged Defendants Walia and Sehrai owed a fiduciary duty to disclose the conflict of interest and diversion of funds. As officers and employees of WaveStrong, both Walia and Sehrai owed fiduciary duties to the company. *Berg & Berg Enterprises*, 178 Cal. App. 4th at 1037. However, Defendant SevenSecur has no alleged fiduciary relationship with WaveStrong. Absent this duty to disclose Walia's financial stake in any of the companies, Dhoat fails to allege a misrepresentation based on non-disclosure or concealment by SevenSecur.

As to Walia's second argument, the SACC plausibly alleges reliance by WaveStrong on the concealment of material information that Walia and Sehrai had a duty to disclose. Walia contends that because the transactions between WaveStrong and the billing entities were properly recorded in the WaveStrong books, there was no concealment, and therefore no reliance. Again, this argument fails to address the concealment actually alleged: Walia did not disclose his interest in SevenSecur or the billing entities, as well as the use of WaveStrong's database to poach IT professionals and contract them back to WaveStrong at an inflated rate. The transactions themselves are not the concealment, it is the diversion of profits and Walia's financial conflict of interest that comprise the alleged fraud.

Accordingly, the Court DENIES the motion to dismiss the fraud claim as to Defendant Walia but GRANTS the motion as to Defendants SevenSecur and WaveStrong.

## CONCLUSION

For the above reasons, the Court GRANTS in part and DENIES in part the motion to dismiss filed by Walia, SevenSecur, and WaveStrong.

The Court dismisses the following claims without leave to amend, since amendment would be futile as a matter of law:

- Claim 2 (wire fraud);
- Claim 6 (aiding and abetting causes of action for wire fraud and civil RICO).

The Court also dismisses the following claims with leave to amend:

- Claim 3 (violation of 18 U.S.C. § 1962(a));
- Claim 4 (civil theft);
- Claim 5 (direct cause of action for breach of fiduciary duty);

- Claim 6 (aiding and abetting the direct breach of fiduciary duty and civil theft);
- Claim 7 (common law fraud against Defendants SevenSecur and WaveStrong).

The Court DENIES the motion as to the following claims:

- Claim 1 (rescission based on fraud in the inducement);
- Claim 3 (violations of 18 U.S.C. §§ 1962(c) and (d));
- Claim 5 (derivative cause of action for breach of fiduciary duty);
- Claim 6 (aiding and abetting the derivative breach of fiduciary duty);
- Claim 7 (common law fraud against Defendant Walia).

Dhoat may file an amended complaint, if he wishes, as to the dismissed claims except for those claims dismissed without leave to amend. Any amended complaint must be filed by December 4, 2024. Plaintiff is not granted leave to amend to add new claims or new defendants. If Plaintiff does not file an amended complaint, the case will proceed on the non-dismissed claims. The Court will hold an initial case management conference on December 12, 2024. A joint case management conference statement is due December 5, 2024.

**IT IS SO ORDERED.**

Dated: November 15, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge

19